# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 18, 2011

## STATE OF TENNESSEE v. ERNEST W. MAYS

**Direct Appeal from the Circuit Court for Dickson County**
**Nos. 2009CR120, 2009CR409      Robert E. Burch, Judge**

---

**No. M2011-00235-CCA-R3-CD - Filed February 7, 2012**

---

The defendant, Ernest W. Mays, pled guilty, in two separate cases, in the Dickson County Circuit Court to: (1) two counts of selling cocaine less than .5 grams, a Class C felony; (2) conspiracy to commit aggravated kidnapping, a Class C felony; (3) simple assault, a Class A misdemeanor; and (4) retaliation for past action, a Class E felony. Pursuant to the plea agreement, the defendant was to receive an effective sentence of ten years, as a Range II offender, with the manner of service to be determined by the trial court. Following a sentencing hearing, the trial court ordered that the sentence be served in confinement. On appeal, the defendant contends that the court erred in denying him an alternative sentence. Following review of the record before us, we conclude no error occurred and affirm the sentences as imposed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JEFFREY S. BIVINS, J., joined.

Francis King, Nashville, Tennessee, for the appellant, Ernest W. Mays.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Dan Mitchum Alsobrooks, District Attorney General; and Billy Miller, Jr., and Sarah Wojnarowski, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### Procedural History

The defendant's convictions in this appeal arose in two separate cases in the Dickson

County Circuit Court. The first case involved the defendant selling cocaine to Kris Starkey, a confidential informant, on multiple occasions. Following his arrest and subsequent release on bond, the defendant, along with four co-defendants, then committed the attack against Starkey in retaliation for her actions. The defendant acknowledged that he was at the home of Vicki Whorley when Ms. Starkey arrived. He stated that he struck her several times. The defendant denied that he had held Ms. Starkey against her will, but he acknowledged that he understood that a jury could convict him of kidnapping if he were to proceed to trial based upon the State's proof.

After being indicted by a grand jury, the defendant entered into negotiations with the State, and a plea agreement was reached. On August 3, 2010, the defendant pled guilty to: (1) two counts of the sale of cocaine under .5 grams; (2) conspiracy to commit aggravated kidnapping; (3) simple assault; and (4) retaliation for past action. The agreement further provided that the defendant was to receive an effective sentence of ten years, as a Range II offender, with the manner of service to be determined by the trial court.

At the sentencing hearing held, the State introduced a copy of the presentence report into evidence without objection. The State also called Stephanie Herndon, the Board of Probation and Parole officer who had prepared the report, and the officer who had been involved in the actual investigation of the crimes committed. Ms. Herndon testified that she had compiled the presentence report and proceeded to outline the prior convictions listed on the report, which included four prior felony convictions and several misdemeanor convictions dating back to when the defendant was seventeen years of age. Ms. Herndon also noted that the report established that the defendant had committed the first of the controlled drug sales in this case less than one year after completing his parole on a prior conviction. She also indicated that the defendant had informed her that he began using marijuana and alcohol at approximately thirteen years of age and had continued to do so throughout his adulthood.

James Mann, an agent with the 23rd Judicial District's Drug Task Force, testified that he was the agent in charge and had conducted the controlled buys of drugs from the defendant in this case. He also testified that he had met with Ms. Starkey after she was attacked by the defendant and his co-defendants. He said that she suffered severe bruising on her eyes and lip and that her hands were swollen. Agent Mann also testified that the defendant had been on bond for the drug offenses when he committed the assault on Ms. Starkey.

The defendant also testified at the hearing. He stated that he had four daughters with his fiancee, who was charged as a co-defendant in this case. He also had a son by yet another of the co-defendants charged and indicated that he knew her "just from selling drugs." The

defendant also acknowledged that on the night that Starkey was assaulted, his four children were staying with another individual, who was charged as a co-defendant in the drug case. The defendant said that he dropped out of high school in the tenth grade in order to support his family. He stated that after he was released from prison in 2003, he worked at McDonald's for six months, before starting work as a landscaper, and finally working as a carpenter framing houses.

The defendant acknowledged that he began smoking marijuana and drinking alcohol when he was thirteen and that he continued to consume alcohol and illegal drugs until his arrest and incarceration in these cases. The defendant said that he had never sought treatment for drug or alcohol addiction. He acknowledged that he had three prior assault convictions on his record from 1998, 1999, and 2000. The defendant requested that he be granted an alternative sentence and stated that if he received such a sentence, he planned to "get a decent job, spend more time with my family, get out of Dickson away from this negative environment." The defendant also "felt bad" about what had happened and acknowledged that he "was at fault."

After hearing the evidence presented, the trial court determined that the defendant was not a proper candidate for alternative sentencing and ordered that the effective sentence of ten years be served in confinement. The defendant now appeals that determination.

**Analysis**

On appeal, the defendant's sole issue is whether the trial court's denial of an alternative sentence, either probation or community corrections, results in his sentence being an excessive punishment. When reviewing sentencing issues, the appellate court shall conduct a *de novo* review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct. T.C.A. § 40-35-401(d) (2010). "[T]he presumption of correctness 'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If . . . the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." *Id.* at 345 (citing *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). The defendant bears "the burden of showing that the sentence is improper." *Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) (2010) provides as follows:

In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration. . . .

Under the revised Tennessee sentencing scheme, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *Carter*, 254 S.W.3d at 347 (citing T.C.A. § 40-35-102(6)). Instead, a defendant not within "the parameters of subdivision (5) [of Tennessee Code Annotated section 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id*. Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider" them. T.C.A. § 40-35-102(6) (emphasis added). However, because the defendant was convicted as a Range II offender, he does not fall within these parameters.

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. T.C.A. § 40-35-303(a) (2010). However, a defendant is not automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he is a suitable candidate for probation. *Id*. at 303(b); *see also State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. *Bingham*, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. *Id*. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. *Goode*, 956 S.W.2d at 527. Also relevant is whether a sentence of probation would unduly depreciate the seriousness of the offense. *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997); *Bingham*, 910 S.W.2d at 456.

A trial court may deny alternative sentencing and sentence a defendant to confinement based on any one of the following considerations:

(A)     Confinement is necessary to protect society by restraining a defendant

who has a long history of criminal conduct;

(B)     Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1). In choosing among possible sentencing alternatives, the trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment." T.C.A. § 40-35-103(5); *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. *State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *see also Dowdy*, 894 S.W.2d at 305-06. However, the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. T.C.A. § 40-35-103(5).

In imposing a sentence of confinement, the trial court made the following remarks on the record:

Court assumes according to the statute that [the defendant] is a proper candidate for probation and then will go through the facts of the case to determine if the [S]tate has overcome that presumption and shown that he is not.

Court has considered the proof that was offered here at the hearing, has read and considered the pre-sentence report, I find that the defendant's physical and mental condition, social history is, you know, essentially average. Nothing []remarkable about it. The facts and circumstances surrounding the offense. The Court finds that [the defendant] has been fairly regularly involved in the drug trafficking or the use of drugs. There's a period of time that he has no convictions in there and, you know, I'll take that into account; but if it is not a continuing course of conduct at least it's a recurring course of conduct.

The conspiracy to commit kidnapping, assault, [and the] retaliation . . . [charges] arose out of the drug trafficking situation and the Court views that rather seriously. The defendant has a prior criminal history, he's got four prior felonies and numerous misdemeanors. There are a couple of misdemeanor

assaults in the case but nothing of major significance as far as personal injury goes.

The Court has determined that measures less restrictive than confinement have frequently been applied unsuccessfully to the defendant. I mean he's been on probation twice and committed crimes during that time that he was on probation. He did apparently successfully complete his parole. He was on parole from roughly 2003 to either later 2006/2007 and didn't commit a crime during that time; but then very soon after being released from parole within a year has committed this crime; and so, if he didn't commit it while he was probation at least - on parole at least the [effects] of parole did not last long after he was off.

As far as deterrent affect and so forth, no proofs been offered, so that Court does not consider it.

The Court determines whether the offense was [particularly] enormous, [gross] or heinous. I find that the situation was heinous but I don't think it was particularly so. It could be because we're all jaded with dealing with these horrible crimes and so forth. It's unfortunate that this lady was beaten the way she was. Court certainly is upset by that but I can't find that it was particularly heinous.

Taking all of that into account - there's some - you know, there's some pluses and minuses; and so forth, but most based upon the defendant's prior record, the fact that he committed this second serious crime while he was on bond for the second (sic) and the fact of - particularly in 2009-CR-409 the kidnapping and assault and retaliation I just can't suspend that sentence without depreciating the seriousness of the offense. That strikes at the heart of the criminal justice system and it just can't be put up with; and although that is one fact I have other factors here as well. The Court is of the opinion that the defendant should serve his entire sentence.

On appeal, the defendant has put forth a long litany of reasons to support his contention that the trial court erred in failing to grant him an alternative sentence. He finds fault with the consideration of the defendant's prior offenses, most of which occurred several years prior to the instant crimes and resulted in no substantial physical injuries. His argument further finds fault with the weight given to the fact that the defendant successfully completed parole, although he does acknowledge his failure to complete his probations successfully. The defendant also contends that the court should have given more weight in its decision to

the fact that he has never had treatment for alcohol or drug addiction. Finally, he asserts that the punishment here is too severe as it punishes the defendant's children by removing their father, his strong family commitment, and ability to hold a job from the home. He vehemently argues that probation or community corrections is the appropriate way that this effective ten-year sentence should be served.

As an initial matter, we must note that both the trial court and the defendant referred to the defendant's eligibility for probation and the State's burden to show why it should not be granted. These are not correct statements of law. Eligibility for probation does not automatically entitle a defendant to probation. Rather, the burden is on the defendant to show that he is a suitable candidate. T.C.A. § 40-35-303(b). Moreover, this defendant was convicted as a Range II, multiple offender; thus, he is not within the required parameters to be considered as a "favorable candidate" for an alternative sentence, although he does remain eligible for one based upon the length of his sentence. *See* T.C.A. § 40-35-102(6).

Regardless, we are unpersuaded by the defendant's arguments in this case that the trial court did not appropriately consider all the required factors and principles of sentencing. Upon a finding of any one of the three enumerated factors, it is within the discretion of the trial court to deny any form of alternative sentencing. In its findings here, the trial court made findings supporting all three of the factors: The defendant had a long history of criminal conduct; confinement was necessary to avoid depreciating the seriousness of the offense; and measures less restrictive than confinement had been applied unsuccessfully to the defendant. We find nothing in the record which would indicate that those findings were error.

The presentence report admitted into evidence establishes a long history of criminal convictions and conduct by the defendant. Four felony convictions and several misdemeanor convictions are enumerated. While not all of these convictions involved violence, contrary to the defendant's argument, that is not a requirement to find a long criminal history. We do agree with the defendant that the report reflects a period of time when no new crimes were committed, but we are also cognizant of his own testimony at the hearing when he acknowledged that he was partaking of illegal drugs during this period. Moreover, as noted by the court, less than one year after being released from parole, the defendant committed the instant crimes. The record established a long history of criminal conduct.

Likewise, we are not persuaded that the court's finding that measures less restrictive than confinement had been applied unsuccessfully to the defendant was error. There is no dispute that the defendant has prior probation violations nor was it disputed that he was on bond for the drug charges in this case when he committed the remaining assaultive crimes. Additionally, contrary to the defendant's argument, implicit in the trial court's comments

about the defendant's continual involvement in the drug trade and his various probation violations was consideration of the defendant's potential for rehabilitation. Although not necessary to support the sentence of incarceration, as only one factor is sufficient, the court also found that confinement was necessary to avoid depreciating the offense. In denying an alternative sentence to avoid depreciating the seriousness of an offense, this court should determine if the criminal act is especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree. *See State v. Zeolia*, 928 S.W.2d 457, 462 (Tenn. Crim. App. 1996). In the instant case, the trial court failed to utilize this language. Rather, it made a statement that the crime, while heinous, was not "particularly heinous." However, a reading of the court's findings *in toto* indicates that the court did believe that the crimes, particular the conspiracy, assault, and retaliation charges, were both reprehensible and offensive. The court stated on the record that if it were to suspend the sentence in this case, it would "strike[] at the heart of justice." Clearly, the court considered the defendant's vicious attack of a police informant who was involved in his arrest for drug charges to be reprehensible and offensive conduct.

Based upon our reading of the court's findings, we must conclude that there was no error in the decision to impose a sentence of confinement. The defendant has simply failed to carry his burden to establish otherwise and is entitled to no relief.

## CONCLUSION

Based upon the foregoing, the sentence imposed by the Dickson County Circuit Court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE